IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 19-389 |
| OMAR ACOSTA | |

## MEMORANDUM OPINION

For a second time, Defendant Omar Acosta moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of his health conditions and the dangers posed by COVID-19. For the reasons that follow, his motion will be denied.

### I. BACKGROUND

In February 2020, Acosta pled guilty to one count of possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). For his crimes, on May 21, 2021, Acosta was sentenced to 180 months' imprisonment followed by five-years of supervised release. Acosta is currently serving his sentence at the Federal Correctional Institution Fort Dix located in Fort Dix, New Jersey ("FCI Fort Dix").

On April 3, 2020, while he was detained at the Federal Detention Center in Philadelphia awaiting sentencing, Acosta filed a motion pursuant to the Bail Reform Act, 18 U.S.C. § 3142(i), requesting a revocation of detention and placement in home confinement. His motion was ultimately denied because Section 3142 of the Bail Reform Act did not apply to detentions pending sentence. Instead, his motion was governed by Section 3143 of the Act, and he had not shown he was eligible for relief under that provision.

1

On or about January 10, 2022, Acosta requested compassionate release from the warden of FCI Fort Dix.  More than 30 days later, his request was denied by the Acting Warden.  On May 19, 2022, Acosta filed the instant Motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and requested that his sentence be reduced.

In his instant motion, Acosta claims that he suffers from diabetes, which has worsened due to the diet of peanut butter and jelly sandwiches he was fed while incarcerated at the FDC.  He claims that this diet rendered him effectively blind.  Acosta's Motion is devoted to critiquing the Bureau of Prison's ("BOP's") response to the virus and the harsh conditions of confinement Acosta has endured during the pandemic.  At the FDC, Acosta complains, *inter alia*, that he was: (1) fed a diet which was incompatible with his diabetes; (2) "confined to his cell 23 hours per day"; (3) "not able to communicate in any effective way with his family"; and, (4) that bathroom facilities were "routinely broken."  Acosta states many of these issues have continued at FCI Fort Dix, for example, he still struggles to communicate with his family as the BOP has imposed limits on the monthly number of in-person visits and phone calls and he is confined to his housing unit for the majority of the day.  Acosta is skeptical that this "limit on inmate congregation" does anything to limit the spread of the disease and complains that the BOP has not adopted "rational rules" instead.  As a result of these limits, Acosta states that he has been limited to three-hours per week for outdoor exercise and been unable to access certain programming opportunities.

Acosta further argues that, though he is vaccinated and has received his booster, he expects that he will be at risk at contracting a variant of COVID-19 because he expects that the BOP will be ineffective in managing the spread of more contagious variants.  To support his argument, Acosta references the BOP's past failures in managing the spread of COVID-19.  He

complains that "Fort Dix is home of the deadliest decision in domestic politics" due to a prior outbreak during which Acosta contracted COVID-19, and cites to statistics regarding the number of incarcerated persons who have been infected or died from COVID-19 to date, and other statistics which purportedly show that the BOP will be unable to vaccinate the total prison population.  He claims that he does not pose a risk to his community because he has a loving and supportive family to which he will return and will be benefitted by his release, and because he intends to work in construction upon his release.

The Government opposes Acosta's Motion because he has stated insufficient grounds for the exceptional remedy of compassionate release.  The Government confirms Acosta's medical conditions, but explains that he has received adequate medical care, including surgery, follow-up appointments and examinations with specialists, such that his condition is under control.  It, however, concedes that certain of these appointments have been untimely due to delayed scheduling by the BOP.  Nonetheless, the Government argues that Acosta overstates the severity of the conditions of his incarceration, and that the limits taken by the BOP have been faced by all those incarcerated in an effort to protect them from COVID-19.

## II.      DISCUSSION

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons." *United States v. Mark*, 2020 WL 5801495, at *1 (E.D. Pa. Sept. 29, 2020); *see* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term of imprisonment . . . .").  Specifically, provided the prisoner has exhausted his administrative remedies, Section 3582(c) permits a district court to reduce a prisoner's sentence "after considering the factors set forth in section [18 U.S.C.] § 3553(a) to the extent that they are

applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's applicable policy statement essentially mirrors this language, adding that a sentence reduction may be granted only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(1)(A)(2).

Here, as the Government concedes, Acosta has exhausted his administrative remedies by unsuccessfully seeking compassionate relief from the warden of FCI Fort Dix, and his motion is therefore ripe for consideration.[1]  His sentence may therefore be reduced if:  (1) extraordinary and compelling circumstances warrant such a reduction; (2) he is not a danger to the safety of another person or to the community; and, (3) release is appropriate in consideration the relevant factors set forth in Section 3553(a).

A. **Extraordinary and Compelling Circumstances**

While Section 3582 does not define "extraordinary and compelling" circumstances that warrant relief, the Sentencing Commission's policy statement elaborates on the term in an application note.  *See* U.S.S.G. § 1B1.13, cmt. n.1(A)-(D).  According to U.S.S.G. § 1B1.13, a defendant's serious physical or medical condition is "extraordinary and compelling" if it "substantially diminishes [defendant's ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  *Id.*  It is the defendant's burden "to prove extraordinary and compelling reasons exist."  *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020).  In his Motion, Acosta raises two allegedly extraordinary and

---

[1] *See* 18 U.S.C § 3582(c)(1)(A) (explaining that a defendant may bring a motion for compassionate release pursuant to this Act after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility").

compelling reasons for his release his health and the harshness of the conditions of incarceration he has experienced during the pandemic.

According to Acosta's medical records, he is 44 years old and suffers from insulin-dependent diabetes mellitus, hyperlipidemia, diabetic retinopathy, hypertension, gastro-esophageal reflux and adjustment disorder with anxiety.  For these conditions, Acosta must sleep in a bottom-bunk, wear medical braces for his back and elbow, an eye-patch and shield, medical shoes and cannot lift objects heavier than 15 pounds.  Acosta's diabetes has worsened to the point of blindness while he was incarcerated at the FDC because he was fed a daily diet of peanut-butter and jelly sandwiches.  Notably, the Government does not deny this allegation. [2]

To treat his visual impairment, Acosta has received surgery and care at the Wills Eye Hospital.  His treating physician, however, has complained that he "has had persistently delayed follow up appointments due to delayed scheduling by prison facility" and that he is at risk of "permanent vision loss without follow-ups" as instructed.  Despite this, it seems that the BOP is still unable to timely schedule and bring Acosta for treatment.  His physician instructed that Acosta "MUST return in four weeks" *i.e.*, by June 10, 2022 for a follow-up visit, but the BOP facility instructed that he should be scheduled as a "routine matter."  Eventually, this was changed to a "priority" and Acosta has been now scheduled for a follow-up "some time in the period a few days after . . . June 10."  Though it is not clear from the Government's language when Acosta will be seen, it is evident that it is *after* the date by when the physician demanded

---

[2] Though it is far from clear whether he would succeed, Acosta's disturbing allegations regarding his peanut butter and jelly sandwich diet and the adequacy of his medical care may be better suited as an Eighth Amendment challenge under Section 1983.  *See e.g., Estelle v. Gamble*, 429 U.S. 97, 103-08 (1976) (holding that the Government has an "obligation to provide medical care for those whom it is punishing by incarceration" under the Eighth Amendment, and that a failure to meet that obligation may give rise to a claim under Section 1983. (internal citation omitted)); *Rouse v. Plantier*, 182 F.3d 192, 193 (3d Cir. 1999).

5

that he be brought in for a follow-up visit. Despite this contravention of the physician's orders, the Government nonetheless believes Acosta's follow-up appointment to be sufficiently timely.

The Center for Disease Control has recognized diabetes as an underlying medical condition which places an individual at increased risk of severe illness in the event that they contract COVID-19. *See* Center for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/cornonavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022). Moreover, the fact that the BOP has been less than punctual in providing Acosta the medical care, despite his physician's repeated demands about the importance of timely care, also weighs in favor of a finding of extraordinary and compelling circumstances. *See, e.g.*, *United States v. Beck*, 425 F. Supp.3d 573, 580-81 (M.D.N.C. 2019) (finding that there were extraordinary and compelling circumstances when the BOP repeatedly delayed petitioner's treatment, which made it more likely that her condition would worsen). On the other hand, the administration of FDA-approved vaccinations and booster shots, as Acosta received, mitigates the risk of severe illness (even when the incarcerated person suffers from an underlying health condition) and weighs against finding that there are extraordinary and compelling circumstances. *See United States v. Thomas*, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (holding that the "District Court appropriately recognized that [the Petitioner's] vaccination reduced the health risks he relied on in support of his motion."); *United States v. Hannigan*, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (recognizing a consensus within the Third Circuit that vaccination against COVID-19 "lessens the risk of serious illness or death from COVID-19").

Though the risk of severe illness is mitigated, Acosta's medical conditions nonetheless are an extraordinary and compelling circumstance as they present a "serious physical or medical

6

condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13.[3]

### B. Section 5533 Factors

Section 3582(c) permits a district court to reduce a defendant's sentence based on a qualifying medical condition only "after considering the factors set forth in section § 3553(a)[4] to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A); *United States v. Babbitt*, 496 F. Supp. 3d 903, 914 (E.D. Pa. 2020) ("Not every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A)."). In consideration of the relevant factors under Section 3553(a), in particular the seriousness of Acosta's offense and the time remaining on his sentence, his request for compassionate release will be denied.

Section 3553(a) directs the court to consider the nature and circumstances of the offense, as well as the need for the sentence to reflect the seriousness of the offense, afford adequate

---

[3] Acosta also argues that the harsh conditions of confinement he experienced during the pandemic qualifies as an extraordinary and compelling circumstance that warrants compassionate release. However, "harsh" conditions of confinement created in response to the COVID-19 pandemic are applicable to "all inmates and do not in themselves warrant special treatment." *United States v. Hernandez*, 2022 WL 910091, at *6 (E.D. Pa. Mar. 29, 2022). *See United States v. Everett*, 2021 WL 322182, at *2, *3 (W.D. Pa. Feb. 1, 2021) (recognizing "every prisoner in the facility and other BOP facilities is subject to similar conditions" the purpose of which "is to protect the health of inmates and facility staff during a once-in-a-century pandemic." (internal citation, alterations and quotation marks omitted)). These conditions therefore do not constitute "extraordinary or compelling circumstances." *United States v. McLean*, 2021 WL 5896527, at *2 (3d Cir. Dec. 14, 2021) (affirming District Court's determination that prison conditions did not present an extraordinary and compelling reason for compassionate release).

[4] Section 3553(a) directs a sentencing court to consider, as relevant here:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

deterrence to criminal conduct, and protect the public from future crimes of the defendant. The drug and firearm offenses for which Acosta is incarcerated are unquestionably serious and pose a threat to the health and well-being of the community. *See United States v. Santiago*, 2020 WL 4015245, at *4 (E.D. Pa. July 15, 2020) ("[D]efendant pleaded guilty. . . for trafficking large quantities of drugs and illegally purchasing firearms. . . . These crimes are of a serious nature and underscore the danger defendant poses to the community."). Release after serving so little of his 180-month sentence would not reflect the serious nature of his crimes and would fail to deter such conduct. *See United States v. Daniels*, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (finding that "compassionate release at this stage . . . would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for his offense" where inmate suffered from obesity, but has served less than half of 180-month sentence as an armed career criminal); *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming district court's denial of compassionate release where petitioner had served less than two years of a 15 year sentence).

To support his Motion for compassionate release, Acosta relies heavily on the danger of COVID-19 reinfection. But as of the date of this Opinion, FCI Fort Dix has no positive cases among its inmates and only three cases among its staff. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 6, 2022); *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (noting that a court may take judicial notice of information on a government website). Where, as here, a petitioner relies on "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone" compassionate release cannot be independently justified. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Of note is that, "[m]ost, though not all, of the cases

where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." *United States v. Somerville*, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020). In short, Acosta has not demonstrated a significant increased risk of COVID-19 infection at his facility. *See United States v. Buckman*, 2020 WL 4201509, at *4 (E.D. Pa. July 22, 2020) ("When prisons can keep the number of positive COVID-19 cases low or even at zero . . . the risk of exposure is too speculative to render the circumstances extraordinary and compelling.").

    For the reasons set forth above, Acosta's motion will be denied.

    An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*

_____
**WENDY BEETLESTONE, J.**